IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| TERRY DALE CARNES, § | | |
| TDCJ-CID No. 1756290, § | | |
| § | | |
| Plaintiff, § | | |
| § | | |
| v. § | 2:24-CV-134-Z-BR | |
| § | | |
| TEXAS TECH MEDICAL, *et al.,* § | | |
| § | | |
| Defendants. § | | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
TO DISMISS AMENDED COMPLAINT IN PART**

Before the Court is the Amended Complaint (ECF 8) filed by Plaintiff Terry Dale Carnes ("Carnes") against various Defendants, alleging violations of his civil rights. Carnes filed this lawsuit *pro se* while a prisoner at the Clements Unit of the Texas Department of Criminal Justice ("TDCJ") in Amarillo, Texas, and has been granted permission to proceed *in forma pauperis*. As such, his lawsuit is subject to preliminary screening as provided by the Prison Litigation Reform Act ("PLRA"). Pursuant to such screening and for the reasons stated below, the Magistrate Judge recommends that Carnes' Amended Complaint be DISMISSED in part pursuant to 28 U.S.C. §§ 1915 and 1915A.

**I. STANDARD OF REVIEW**

A court must dismiss a complaint filed *in forma pauperis* by a prisoner against a government entity or employee if the court determines that the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B) (2017); *see also* Section 1915A(b) (applying section to any suit by a prisoner against certain governmental entities, regardless of

whether the prisoner is proceeding *in forma pauperis*). A frivolous complaint lacks any arguable basis, either in fact or in law, for the wrong alleged. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A complaint has no arguable basis in fact if it rests upon clearly fanciful or baseless factual contentions, and similarly lacks an arguable basis in law if it embraces indisputably meritless legal theories. *See id.* at 327; *Geiger v. Jowers*, 404 F.3d 371, 373 (5th Cir. 2005). When analyzing a prisoner's complaint, the court may consider reliable evidence such as the plaintiff's allegations, responses to a questionnaire, and authenticated prison records. *Wilson v. Barrientos*, 926 F.2d 480, 483–84 (5th Cir. 1991); *see also Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999) (explaining that responses to a questionnaire or testimony given during an evidentiary hearing are incorporated into the plaintiff's pleadings).

In evaluating the sufficiency of a complaint, the court accepts well-pleaded factual allegations as true, but does not credit conclusory allegations or assertions that merely restate the legal elements of a claim. *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016). While courts hold *pro se* plaintiffs to a more lenient standard when analyzing complaints, such plaintiffs must nevertheless plead factual allegations that raise the right to relief above a speculative level. *Id.* (*citing Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002)).

## II. LEGAL ANALYSIS

**A.     Factual Background.**[1]

Carnes alleges that, on October 25, 2023, Officer Shelby Hull ("Hull") came to Carnes' cell to take him to the medical clinic for an insulin shot. (ECF 17 at 15). Carnes claims that Hull handcuffed him too tightly, so he asked Hull to loosen the handcuffs while Carnes' arms were

---

[1]These background facts are taken from Carnes' Amended Complaint (ECF 8) and questionnaire responses (ECF 17), and are assumed to be true for the purpose of evaluating the merits of Carnes' causes of action.

sticking through the food slot of the cell door. Hull responded by "yanking the handcuff up and down inside of the food slot[,] hit[t]ing the offender['s] left forearm until it broke." (*Id*.; ECF 8 at 7). Carnes states that it took two officers, Jesus Jimonez and Sgt. Janow, to remove the handcuffs from Carnes' broken wrist, with one turning the key and one prying open the cuff. However, after removing the handcuffs, the three officers left Carnes in his cell without ensuring that he received medical care for his injury. (ECF 17 at 15, 17-18). He states that Jimonez and Janow told other officers and nurses that he was faking his injury. (*Id*.).

Over the next several weeks, Carnes asked several officers for help (usually while being escorted to his insulin shot), including Defendants Sgt. Jackie Stanford, Quinten Evans, Officer Garson, Nico Golden, Olagoke Moyosore, Garrett Boyd, Phillip J. Mendez and Jaden Chavez. The officers provided varying responses, from "if nobody else is going to help you, I ain't going to help you" to taking him to a medical provider. (ECF 17 at 22-34). Carnes also asked for help from the medical providers who gave him his insulin shots (Defendants Heather Tijerina, Caitlin McKeever, Samantha Ward, Crystal Mitchell and Stacy Dennis), but generally was told that he was "there for insulin" and refused treat his arm. (*Id*. at 7-14). Carnes resorted to using his boxer shorts to stop up his toilet so he could use the water to soak his arm in an attempt to reduce the swelling. (ECF 17 at 22).

Carnes alleges that he did not receive an x-ray until February 22, 2024. (ECF 8 at 10; ECF 17 at 19-20). The x-ray showed a healing fracture of his ulna. (*Id*.). He obtained a second x-ray on or about September 19, 2024, which indicated that the fracture had not healed completely, and that there was some bone displacement. As a result, Defendant Mousumi Dey ("Dey") referred him to an orthopedic hand surgeon. (*Id.* at 11). Carnes filed a grievance about the lack of medical care, which was addressed by Defendants E. Olowomeye and J. Riley.

Carnes filed suit for violation of his civil rights; specifically, use of excessive force and failure to provide medical care. As shown below, his claims should be dismissed in part.

**B.	Claims Against Defendants in their Official Capacities.**

Carnes sues Defendants in their individual and official capacities. (ECF 17 at 46). Claims against Defendants in their official capacity are without merit in that they are simply another way of suing the TDCJ, and therefore the State of Texas. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985); *see also Hafer v. Melo*, 502 U.S. 21, 25 (1991) ("Suits against state officials in their official capacity therefore should be treated as suits against the State."). It is well established that suits for monetary damages against state officials in their official capacities cannot succeed under Section 1983. *See Almond v. Tarver*, 468 F. Supp. 2d 886, 892-95 (E.D. Tex. 2006) (collecting authorities and holding that claim against state official in his official capacity was barred by sovereign and Eleventh Amendment immunities). In addition, state officials acting in their official capacities are not "persons" under § 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70-71 (1989). Therefore, the claims for monetary damages against Defendants in their official capacities should be dismissed.

**C.	Claim Against Defendants Bryan Collier and Logan Shedd.**

Carnes alleges that Collier and Shedd violated his constitutional right to be free from cruel and unusual punishment. Specifically, he alleges that Collier is "legally responsible for the operation of TDCJ and for the welfare of all of the inmate[s] in the Texas prison system." (ECF 17 at 1). He alleges that Shedd "has a[n] obligation to get his [personnel] to provide medical care for those whom it is punishing by incarceration." (*Id.* at 3). He admits that he had no personal interaction with either Collier or Shedd. (*Id.* at 2, 4).

It is well established that supervisory officials such as Collier and Shedd are not liable for

the acts of their subordinates unless they: (1) affirmatively participated in an act that caused a constitutional deprivation, or (2) implemented an unconstitutional policy or custom that resulted in injury to the plaintiff. *Mouille v. City of Live Oak*, 977 F.2d 924, 929 (5th Cir. 1992) (citing *Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987)). Supervisory liability exists without overt personal participation in an offensive act only if the supervisory official implements a policy "so deficient that the policy" itself is a repudiation of constitutional rights and is "the moving force of the constitutional violation." *Thompkins*, 828 F.2d at 304 (quotations omitted). Carnes admits that he sues Collier and Shedd solely as supervisors of the other Defendants, and not because of their own actions. (ECF 17 at 2, 3). Carnes alleges only that Collier, as TDCJ executive director, "is responsible for his officer[s'] actions" and that Shedd, as head medical administrator of the Clements Unit, has an obligation to "get his [personnel] to provide medical care." (*Id*. at 1, 3). This is insufficient to state a claim against Collier or Shedd. Carnes does not allege that either Collier or Shedd was personally involved in failing to treat his arm, nor does he allege that either Collier or Shedd created a policy or custom that violated Carnes' rights. Accordingly, the claims against Collier and Shedd should be dismissed.

**D.    Excessive Force Claims Against Shelby Hull.**

As described above, Carnes alleges that Hull used excessive force against him that resulted in Hull breaking Carnes' left wrist. (ECF 17 at 15). It is clearly established that prison staff cannot cause the unnecessary and wanton infliction of pain. *Whitley v. Albers*, 475 U.S. 312, 320 (1986). The "core judicial inquiry" into a plaintiff's claim of excessive force under the Eighth Amendment is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Martin v. Seal*, 510 F. App'x 309, 312 (5th Cir. 2013) (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)). The inquiry has two components: 1) an objective

component that focuses on whether the alleged wrongdoing was nontrivial and harmful enough to violate the constitution; and 2) a subjective component that focuses on the mental state of the alleged wrongdoer. *Hudson*, 503 U.S. at 7-8. Courts look to five nonexclusive factors to make this determination: 1) the extent of the injury suffered; 2) the need for the application of force; 3) the relationship between the need for the application of force and the amount of force actually used; 4) the threat reasonably perceived by the responsible officials; and 5) any efforts made to temper the severity of a forceful response. *Baldwin v. Stalder*, 137 F.3d 836, 839 (5th Cir. 1998) (citing *Hudson*, 503 U.S. at 7). Courts may consider these factors in any order. *Id.*

The Eighth Amendment's prohibition of cruel and unusual punishment "necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Hudson*, 503 U.S. at 9-10. Although a showing of "significant injury" is no longer required in the context of an excessive force claim, "we do require a plaintiff asserting an excessive force claim to have suffered at least some form of injury." *Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001) (citing *Williams v. Bramer*, 180 F.3d 699, 703 (5th Cir. 1999)). The injury must be more than a *de minimis* injury and must be evaluated in the context in which the force was deployed. *Glenn*, 242 F.3d at 314. When force is employed and the resultant injury is unrelated to the necessary force required to restore order and is motivated instead by malice, such injury cannot be *de minimis*. *Id.*

Assuming the truth of the Carnes' allegations for the purposes of screening, the *Hudson* factors support Carnes' claims. His broken wrist is more than a *de minimis* injury. Further, according to Carnes, no force was needed because he was not resisting Hull and his arms were handcuffed and sticking through the food slot. Carnes claims that he posed no threat and Hull could not have reasonably perceived a need for force. Therefore, Carnes has sufficiently alleged "a

random, unprovoked application of force" rather than an immediate response to a serious security issue. *See Contreras v. Wauson*, No. 5:21-CV-00038-C, 2023 WL 9508831, at *6 (N.D. Tex. July 5, 2023). The Court cannot determine from the face of the Amended Complaint whether, and to what extent, Hull tempered his use of force. Therefore, the Court will assume for the purposes of screening that this factor supports Carnes's allegations. In sum, the *Hudson* factors weigh in favor of Carnes and his claim of excessive force against Hull survives screening.

E.  **Claims Against Hull, Jesus Jimonez and Sgt. Janow for Failure to Render Medical Aid.**

Carnes claims that Jimonez and Janow joined Hull in Carnes' cell immediately after the use of force and had to work together to remove the handcuffs from Carnes' swollen and bloody arm, but all three officers left Carnes in his cell without medical care after they removed the handcuffs. (ECF 17 at 18). Failure to render medical aid requires (1) deliberate indifference; (2) which results in substantial harm. *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993). Both the deliberate indifference and substantial harm are necessary elements.

A prison official's deliberate indifference to the serious medical needs of a prisoner can constitute a violation of the Eighth Amendment actionable under 42 U.S.C. § 1983. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Deliberate indifference is an "extremely high standard to meet." *Domino v. Tex. Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001). It requires a finding that the defendant "disregards a risk of harm of which he is aware" and does not permit such a finding based on mere "failure to alleviate a significant risk that [the person] should have perceived but did not[.]" *Farmer v. Brennan*, 511 U.S. 825, 836-40 (1994). A plaintiff must show that the defendant "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Brewster v. Dretke*, 587 F.3d 764, 770 (5th Cir. 2009) (citation and internal

quotation omitted); *see also McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1997) ("Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind.").

The deliberate indifference standard has both an objective and subjective component. *See Farmer*, 511 U.S. at 834. To establish deliberate indifference, Carnes must establish that the defendants were (1) aware of facts from which an inference of an excessive risk to Carnes' health or safety could be drawn, and (2) that they actually drew an inference that such potential for harm existed. *Id.* at 837; *Harris v. Hegmann*, 198 F.3d 153, 159 (5th Cir. 1999). Under the subjective prong of this analysis, a prison official acts with deliberate indifference "only if … he knows that inmates face a substantial risk of serious bodily harm and … he disregards that risk by failing to take reasonable measures to abate it." *Gobert v. Caldwell,* 463 F.3d 339, 346 (5th Cir. 2006) (quoting *Farmer*, 511 U.S. at 847); *Hudson*, 503 U.S. at 9 ("Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'").

Further, a delay in delivering medical care creates constitutional liability only where the alleged deliberate indifference results in substantial harm. *Mendoza*, 989 F.2d at 193. In sum, an inmate must demonstrate that prison staff "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs" to state a viable claim for deliberate indifference to serious medical needs. *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985).

For the purposes of screening, Carnes has sufficiently alleged that Hull, Jimonez and Janow "refused to treat him, ignored his complaints, intentionally treated him incorrectly" and engaged in conduct "that would clearly evince a wanton disregard for any serious medical needs." His

8

claims against Hull, Jimonez and Janow survive screening.

**F.    Claims Against Other Guards.**

Carnes alleges that he sought help from guards Jackie Stanford, Quinten Evans, Officer Garson, Nico Golden, Olagoke Moyosore, Garrett Boyd, Phillip J. Mendez and Jaden Chavez after his wrist was broken; however, none reported his injury or ensured that he received medical care.

**1.    Failure to Report Hull's Use of Excessive Force and Carnes' Resultant Injury.**

Generally, an officer's failure to report another officer's use of allegedly excessive force does not constitute an actionable constitutional claim. *Stewart v. Carmona*, No. 3:09-CV-731-O-BF, 2010 WL 5625851, at *6 (N.D. Tex. Dec. 15, 2010) (noting defendant violated no clearly established law by not reporting another officer's alleged use of excessive force on plaintiff); *Payton v. DuBroc*, No. 1:05CV2092, 2006 WL 2925387, at *3 (W.D. La. Sept. 6, 2006) (holding plaintiff's claim that defendant failed to report his coworker's use of excessive force in spraying inmate with chemicals "does not fall under the Eighth Amendment and should be dismissed as frivolous"). To the extent that the guards may have violated TDCJ regulations by failing to report Carnes's injury, Carnes has not stated a Section 1983 claim because a violation of prison rules alone is insufficient to rise to the standards of a constitutional claim. *Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996); *Hernandez v. Estelle*, 788 F.2d 1154, 1158 (5th Cir. 1986); *see also Hernandez v. Johnson*, No. 5:04-CV-276, 2006 WL 2370329, at *14 (E.D. Tex. Aug. 14, 2006) (finding that, although correctional officers' failure to report use of force may have violated jail rules, plaintiff did not show how this violated the Constitution). Carnes' Section 1983 claim against Stanford, Evans, Garson, Golden, Moyosore, Boyd, Mendez and Chavez based upon their failure to report the incident at issue fails to state a constitutional violation and should be dismissed.

### 2. Failure to Provide Medical Aid.

Carnes next alleges that Stanford, Evans, Garson, Golden, Moyosore, Boyd, Mendez and Chavez failed to provide medical aid. Under the standards set forth above, Carnes has alleged sufficient facts to survive screening as to Boyd and Mendez. Specifically, he alleges that Boyd told him that "if nobody else will help you, I ain't going to help you." (ECF 17 at 29). He alleges that Mendez realized that Carnes' wrist was too swollen to be handcuffed, so Mendez refused to take him to his insulin shot appointment. (*Id*. at 29). Each allegation could indicate that the guard was both aware of Carnes' injury and need for medical care, and refused his request for help such that Carnes' allegations against them survive screening.

Conversely, Carnes alleges that Stanford tried to call medical on his behalf for a week, but medical told Stanford that Carnes was faking his injury. (*Id*. at 21). Garson took him to see a medical provider on January 3, 2024. (*Id*. at 23). He alleges that, during an insulin shot visit, Golden aske the medical provider to look at Carnes's wrist. (*Id*. at 25). Therefore, he has failed to allege that Stanford, Garson and Golden ignored his need for medical care and his claims against them should be dismissed.

Regarding his claims against Moyosore, Evans and Chavez, Carnes alleges no facts indicting deliberate indifference. Specifically, he alleges no facts indicating that Moyosore, Evans or Chavez "actually drew the inference" that the potential for harm existed by their failure to act. *See Farmer*, 511 U.S. at 837. As a result, his claims against Moyosore, Evans and Chavez should be dismissed.

### G. Claims Against Medical Providers.

#### 1. Claims Against Mousumi Dey and Dr. Whatson.

Carnes alleges that Dey failed to provide "adequate medical care." (ECF 17 at 4). He states

that Dey ordered an x-ray on February 22, 2024 (approximately 120 days after his arm was broken). He claims that she knew his arm was broken after viewing the x-ray, but failed to provide adequate medical treatment between that date and September 16, 2024, the date a second x-ray showed that his injury had worsened and that he needed surgery. (*Id*. at 4-6). Carnes alleges that he spoke with Dr. Whatson on April 15, 2024, via a telehealth link and showed her his broken arm. (ECF 17 at 6). This meeting occurred after his arm had been x-rayed and he had begun receiving care. (*Id*.). He states that Whatson told him during the telehealth visit that his arm was healing. However, x-rays taken on October 25, 2024, showed that his arm had "gotten worse" since the telehealth visit. (*Id.*).

Carnes' claims against Dey and Whatson amount solely to dissatisfaction with the medical treatment he received, rather than their outright refusal to provide treatment. *See Winston v. Stacks*, 243 F. App'x 805, 807 (5th Cir. 2007) (per curiam) ("[Prisoner's] dissatisfaction with the treatment he received is insufficient to state a constitutional claim."); *McQueen v. Karr*, No. 02-10553, 2002 WL 31688891, at *1 (5th Cir. Oct. 29, 2002) (per curiam) (affirming dismissal of prisoner's claim based on "dissatisfaction with the treatment offered him"); *Garrett v. Sulser*, No. 6:17cv310, 2019 WL 8500862, at *7 (E.D. Tex. Nov. 4, 2019) (concluding that complaints alleging medical personnel "merely performed a 'cursory' examination" were nothing more than "disagreement and/or dissatisfaction with the medical treatment he received"), *adopted by* 2020 WL 562804 (E.D. Tex. Feb. 5, 2020); *Shipley v. Statton*, No. 1:08-CV-133-C ECF, 2009 WL 1469716, at *4 (N.D. Tex. May 27, 2009) ("[Plaintiff's] dissatisfaction and disagreement with the [care provided] ... does not demonstrate that he was denied treatment.").

Carnes does not allege that either Dey or Whatson refused to treat him, or that they were involved in the delay between the time his wrist was broken and the time he was seen by them and

11

his arm x-rayed. The fact that his broken bone did not sufficiently heal between his first x-ray and second is unfortunate, but does not state a constitutional violation, even if Dey and Whatson should have realized earlier than they did that the treatment they were providing was unsuccessful. An official's "failure to alleviate a significant risk that the official should have perceived, but did not, is insufficient to show deliberate indifference." *Domino*, 239 F.3d at 756 (alterations and internal quotation omitted) (quoting *Farmer*, 511 U.S. at 838). "[D]eliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm." *Thompson v. Upshur Cnty.*, 245 F.3d 447, 459 (5th Cir. 2001). Instead, an official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Brewster*, 587 F.3d at 770 (quoting *Farmer*, 511 U.S. at 837); *see also Lawson v. Dallas Cnty.*, 286 F.3d 257, 262 (5th Cir. 2002) (holding that deliberate indifference is a "subjective inquiry," and inmate must show that the prison official was actually aware of risk of harm and consciously ignored it).

Carnes alleges no facts showing that either Dey or Whatson was aware that Carnes faced a substantial risk of serious harm due to the treatment they provided, or that they actually drew the inference and deliberately disregarded the risk. He admits that Dey ordered an x-ray of his arm, and that Whatson looked at his x-ray as she gave her opinion that his arm was healing. (ECF 17). The fact that Carnes' arm had "gotten worse" in an unspecified manner does not show that either Dey or Whatson was deliberately indifferent to his medical needs. At most, Carnes alleges only malpractice or negligence. Allegations of malpractice, negligence, or unsuccessful treatment fail to establish deliberate indifference. *Gobert*, 463 F.3d at 346; *Casher v. Melton*, No. 1:14-CV-12-C, 2015 WL 3541476, at *4 (N.D. Tex. June 2, 2015) ("Negligence or medical malpractice does not amount to a constitutional violation."); *Martikean v. United States*, No. 3:11-CV-1774-M-BH,

2012 WL 1986919, at *5 (N.D. Tex. Apr. 6, 2012) ("A failure to provide additional treatment may show medical malpractice, but it does not show deliberate indifference because decisions to provide additional treatment are matters of medical judgment."), *adopted by* 2012 WL 1992111 (N.D. Tex. June 4, 2012).

"The decision whether to provide additional treatment 'is a classic example of a matter for medical judgment.'" *Domino*, 239 F.3d at 756 (quoting *Estelle*, 429 U.S. at 107). An incorrect diagnosis "does not suffice to state a claim for deliberate indifference." *Id*. (citing *Johnson*, 759 F.2d at 1238)). If a prisoner receives medical treatment, federal constitutional protections are not violated simply because that treatment was unsuccessful or because pain or other symptoms persist despite the treatment. *Gobert*, 463 F.3d at 345; *Williams v. Chief of Medical Operations, Forrest Cty. Jail*, No. 94-10115, 1994 WL 733493 at *2 (5th Cir. Dec. 27, 1994). In addition, a prisoner is not entitled to medical treatment of his choosing simply upon request. *Stafford v. Kelly*, No. 09-CV-0133, 2011 WL 2633034 at *2 (N.D. Miss. June 3, 2011). A prisoner's disagreement with the course of his treatment is not cognizable under Section 1983. Carnes' claims against Dey and Whatson should be dismissed.

### 2. Claims Against Tijerina, McKeever, Ward, Mitchell and Dennis.

Carnes alleges that, when he went to medical for his insulin shots, he asked the medical providers who administered the shots (Defendants Tijerina, McKeever, Ward, Mitchell and Dennis) to provide medical care for his broken wrist during each visit. He states that all but McKeever told him that he was there to get insulin, not to get treated for a broken arm, and refused him treatment. (ECF 17 at 8, 11-14). McKeever, he states, referred him to a medical provider to pursue treatment for his arm. (*Id.* at 9).

Because Carnes alleges that McKeever referred him for treatment for his arm, he fails to

13

state a claim that McKeever ignored his complaints or intentionally failed to provide medical care. The fact that McKeever did not herself immediately provide the care does not change the analysis. An inmate's disagreement with the medical treatment provided does not give rise to a constitutional claim. *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997). Under the standards set forth above, Carnes has stated a plausible claim that survives screening against Tijerina, Ward, Mitchell and Dennis as trained medical providers who refused him treatment and ignored his requests for medical care. His claim against McKeever should be dismissed.

**H.      Claims Against Olowomeye and Riley.**

Carnes alleges that Defendants E. Olowomeye and J. Riley became aware of Defendants' failure to provide medical care to him by virtue of a grievance filed by Carnes in February 2024. He claims that they also failed to either report the other Defendants or ensure that he received medical care. (ECF 17 at 32, 33).

In short, Carnes's allegations against Olowomeye and Riley amount to nothing more than a claim that they did not resolve Carnes's grievance to his satisfaction. "Prisoners do not have a federally protected liberty interest in having [their] grievances resolved to their satisfaction, and an alleged § 1983 due process violation for failure to investigate grievances is indisputably meritless." *Hill v. Walker*, 718 F. App'x 243, 250 (5th Cir. 2018) (internal quotations omitted). The Fifth Circuit has stated that an alleged violation of a prisoner's due process rights resulting from prison grievance procedures is a "legally nonexistent interest." *Geiger v. Jowers*, 404 F.3d 371, 374 (5th Cir. 2005). Further, even an intentional cover-up does not amount to a constitutional violation. *See Cunningham v. de la Vaga*, 131 F.3d 141 (5th Cir. 1997) (per curiam) ("Regarding Cunningham's contention that the defendants conspired to cover up the attack …, Cunningham has not shown that the defendants violated any constitutionally protected right."). Accordingly,

assuming the truth of Carnes's Amended Complaint, his cause of action against Olowomeye and Riley regarding their responses to his grievance fails to state a claim and, therefore, should be dismissed. *See Hill*, 718 F. App'x at 250.

### III. RECOMMENDATION

For the reasons stated above, the Magistrate Judge concludes that all claims against Collier, Shedd, Whatson, Dey, McKeever, Moyosore, Chavez, Stanford, Evans, Golden and Garson should be DISMISSED WITH PREJUDICE pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). Carnes' failure to report claims against Boyd and Mendez should be DISMISSED WITH PREJUDICE as set forth above, although his claims against Boyd and Mendez for failing to provide medical aid survive screening. Carnes' claims for monetary damages against Defendants in their official capacities should be DISMISSED WITH PREJUDICE. Carnes' remaining claims survive screening.

### IV. INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Findings, Conclusions and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED September 22, 2025.

_____
LEE ANN RENO
UNITED STATES MAGISTRATE JUDGE

### * NOTICE OF RIGHT TO OBJECT *

Any party may object to these proposed findings, conclusions and recommendation. In the

event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Findings, Conclusions and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge and accepted by the district court. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), *as recognized in ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, 521 n.5 (5th Cir. 2012); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).